UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------X
JOANNE CASTAGNA,

                              *Plaintiff*,                              **COMPLAINT**

                    -against-                              **JURY TRIAL DEMAND**

U.S. ARMY CORPS OF ENGINEERS, NEW
YORK DISTRICT, MATTHEW LUZZATTO, In
His Official Capacity as DISTRICT
COMMANDER, and MATTHEW COSBY, In His
Official Capacity as CHIEF OF STAFF, U.S.
ARMY CORPS OF ENGINEERS, NEW YORK
DISTRICT,

                              *Defendants*.
----------------------------------------------------------X

        Plaintiff, JoAnne Castagna ("Plaintiff"), by and through her attorneys, Ballon Stoll P.C.,

complaining of Defendants, U.S. Army Corps of Engineers ("U.S. Corps" or "Corps"), Matthew

Luzzatto , in his official capacity as District Commander ("Commander Luzzatto" or "Luzzatto")

and Matthew Cosby, in his official capacity as Chief of Staff. U.S. Army Corps of Engineers, New

York District ("Cosby") (collectively, "Defendants"), alleges upon personal knowledge unless

where information and belief is stated, the following:

        1.       This is an action brought for substantial compensatory damages and reasonable

counsel fees premised upon the Defendants' continuing acts of hostile work environment, and

retaliation based on Plaintiff's disability, in violation of Americans with Disabilities Act of 1990

("ADA"), 42 U.S.C. § 12112 *et seq*.; the Executive Law of the State of New York, New York State

Human Rights Law ("Executive Law" or "SHRL"), § 296, *et seq*,; and the Administrative Code

of the City of New York, New York City Human Rights Law ("Administrative Code" or "CHRL"),

§ 8-101, *et seq.*

## JURISDICTION AND VENUE

2.      This court has jurisdiction over Plaintiff's federal claims pursuant to 28 U.S.C.

§1331 and 42 U.S.C. §§ 2000-e5(f)(1),5(f)(3) and supplemental jurisdiction over the State and

City law claims pursuant to 28 U.S.C. § 1367.

3.      As the Southern District is the district where a substantial part of the events giving

rise to the claims occurred, venue is proper within this district pursuant to 28 U.S.C. § 1391 (a)(2).

4.      Plaintiff filed a charge with the Equal Employment Opportunity Commission

("EEOC") against Defendants on January 13, 2021, complaining of discrimination and/or

retaliation, as alleged in this complaint.

5.      On or about January 31, 2022, the EEOC issued a case dismissal providing notice

to all Defendants that Plaintiff will be filing claim in federal court (attached hereto as **Exhibit 1**).

## THE PARTIES

*Plaintiff*

6.      Plaintiff is a "person" within the meaning of Executive Law § 292(1), and within

the meaning of New York City Administrative Code § 8-102(1) and ADA § 12102(1).

7.      Plaintiff resides in the County of Kings, Brooklyn, New York.

*Defendants*

8.      Defendant U.S. Corps is a United States Federal Government Agency existing by

virtue of the laws of the United States.  The U.S. Corps is liable for the discrimination Plaintiff

suffered.

9.      Defendant U.S. Corps is an employer within the meaning of Executive Law §

292(5), and within the meaning of New York City Administrative Code § 8-107(5) and ADA

2

§1211(5).  Upon information and belief, the U.S. Corps employs approximately 32,000 employees throughout the United States.

10.     At all relevant times herein, Plaintiff was employed by the Defendant U.S. Corps at its New York District.

11.     Defendant Luzzatto is employed as a Commander by the U.S. Army Corps of Engineers, in the New York District.

12.     Defendant Matthew Cosby is employed as Chief of Staff by the U.S. Army Corps of Engineers, in the New York District.

**JURY DEMAND**

13.      Plaintiff hereby demands a trial by jury in this action.

**FACTS**

14.     Plaintiff, 52 years old, began working for the U.S. Corps in 2000, and since 2012, she has been employed as a Public Affairs Specialist.

15.     Throughout her time in the U.S. Corps, Plaintiff has consistently received superb evaluations and has always performed her duties and responsibilities at a high level.

16.     Plaintiff's job responsibilities include writing feature articles about U.S. Corps projects, putting together briefings, and creating webpages for the U.S. Corps New York District website, all of which was possible to be performed remotely.

17.     Occasionally, the Plaintiff made non-mandatory field trips to take photos of the projects being featured in the articles, but none of such trips were mandated prior to the COVID-19 pandemic.  While the occasional trip may be necessary, the vast majority of the time these trips were made solely at Plaintiff's discretion.

18.     In March 2020, due to the COVID-19 Pandemic, Plaintiff fully and competently performed her work remotely, from home.  The fact that she performed her work remotely did not hinder or impact the quality of her performance.  The agency mandated Maximum Telework for the safety of the employees.  The District Commander at the time, Thomas Asbery, distributed an email to employees wherein he stated that this is especially important for those who are over fifty (50) years old and have health conditions. Wells, the Chief Public Affairs Officer, relayed District Commander Asbery's directive to his public affairs staff and stated, "… my commitment to each of you and your health and well-being is paramount."

19.     Since March 2020, Plaintiff was successfully performing her duties.  While working remotely, Wells and the current Commander of the District, Luzzatto, praised the Plaintiff's work.  Commander Luzzatto praised her in a video message he sent to the District, and he emailed the District an article she wrote about the agency's COVID-19 mission.  In addition, Commander Luzzatto praised her in an email he sent to Brigadier General Thomas T. Tickner of the U.S. Army Corps of Engineers, North Atlantic Division.  Wells forwarded this email to Plaintiff and stated "I know how hard you work and it's without a net and none of it is easy.  I'm just glad we seem to have a command staff interested in recognizing those efforts.  Keep the ball rolling and let's see where it goes."

20.     On or about September 2020, Wells informed all of his employees in the Public Affairs Office, including Plaintiff to return to office work on "staggered schedule", requiring Plaintiff to come in person 2-3 days a week, despite Defendants' "Maximum Telework" policy that stipulates that working in person in the office is 100% voluntary and that if an employee's supervisor requires that employee to come to the office, and the employee is unable to, then the employee should discuss their inability to attend in-person with the supervisor and if necessary,

seek further assistance from the union. The "Maximum Telework" policy, upon information and belief, applied to all employees in the District Offices located at 26 Federal Plaza, New York, New York.

21.     Per the "Maximum Telework" policy, Plaintiff informed Wells about her health concerns with respect to traveling to work.  Plaintiff's only method of travel to work from her home is by subway requiring on average a two (2) hour daily commute.  Wells informed Plaintiff that she is allowed to work an additional two (2) weeks remotely, but then is expected to return to the office on October 13, 2020.  Plaintiff repeatedly relayed her health concerns to Wells, which were repeatedly ignored and/or discarded.

22.     Plaintiff reached out to Christopher Dols ("Dols"), President of IFPTE Local 98, U.S. Army Corps of Engineers, New York District. Dols held an online meeting with Plaintiff, Wells, and Mercedes Fernandez ("Fernandez"), Human Resources Specialist in the U.S. Corps, New York District. At the meeting, Dols informed Wells that he is violating the "Maximum Telework" policy, as well as inquiring about the specifics of Plaintiff's job responsibilities that would require her to work in person in the office.  Wells did not clarify his reasoning for mandating Plaintiff to come to work in-person. Plaintiff informed Wells and Fernandez that she has an autoimmune condition that puts her at high risk for health complications from COVID-19.  As evidence of further discrimination and retaliation against Plaintiff, Fernandez suggested that Plaintiff file an application for a Reasonable Accommodation.  Plaintiff's remote work was extended until she filed the application for Reasonable Accommodation. Said discrimination began when the District was told to work from home to protect its health and this right was taken away from the Plaintiff. It's a double-standard.  The agency discriminated against the Plaintiff's rights

to protect herself. After Defendants found out about her health conditions that compromises her with COVID-19, they continued to discriminate.

23.     Plaintiff and Dols reached out to Jean Lau ("Lau"), Chief of the Equal Employment Opportunity of the NY District. Lau informed Plaintiff that it is unnecessary to file a formal Reasonable Accommodation form since Plaintiff has already informed Wells during the meeting about her health condition. Lau suggested obtaining the reasonable accommodation without submitting the reasonable accommodation request application to Wells.  Thus, taking the advice of Lau, Plaintiff emailed Wells inquiring about obtaining an accommodation, rather than submitting a formal application.

24.     On or about October 23, 2020, Wells informed the Plaintiff that she still needed to file the Reasonable Accommodation application if she is seeking accommodation, as well as accused her of refusing to come to work due to her health condition.

25.     Therefore, Plaintiff reached out to her primary medical doctor, Harry Berkowitz ("Berkowitz"), requesting him to provide necessary paperwork in support of her Reasonable Accommodation application. Plaintiff was able to schedule an appointment with Berkowitz on November 10, 2020.

26.     Wells notified Plaintiff that he rejects her Reasonable Accommodation request because he did not receive supporting doctor's notes by October 29, 2020.  Wells informed Plaintiff that she is mandated to return to the office on November 10, 2020, unless she provides supporting medical documentation.

27.     Dols inquired from Wells about the work that the Plaintiff is supposedly not completing as a result of working remotely, or work that she must complete, and which can only be completed in the office, but Wells did not clarify and kept only insisting that Plaintiff returns

to work in-person in the office, which was a false accusation, because Plaintiff was able to successfully complete all her assignments remotely.

28.     The Plaintiff applied for sick leave for a few upcoming work days to give herself time to get the reasonable accommodation paperwork together and to keep herself safe.  On the leave forms she indicated "I'm taking this leave because I don't feel comfortable traveling to work in the context of the current pandemic." Wells denied her leave.

29.     On or about October 9, 2020, Dols listened to Luzzatto's weekly District video to employees, which he will continue to provide to employees throughout the pandemic. Luzzatto said in his video, "If your job allows you to telework with no mission impact, then you should be allowed to telework.  If your supervisor is telling you that you are not allowed to, talk with them to have them explain why this is so because Maximum Telework remains fully authorized." After watching the video, Dols reached out to Luzzatto – who oversaw the aforementioned Maximum Telework policy, about the Plaintiff's situation. Luzzatto suggested reaching out to the next level supervisor, Matthew Cosby ("Cosby"), Chief of Staff for the U.S. Corp, New York District.

30.     Dols told Cosby that the Plaintiff deserves an appeal to challenge her mission-essential status.  After initially expressing he didn't want to give the Plaintiff a chance to appeal, Cosby scheduled a remote meeting for November 12, 2020 with the Plaintiff for her to present her appeal to him.

31.     The Plaintiff wrote her appeal and provided it to him ahead of time. During this meeting, Cosby mentions that he didn't read the appeal, so she had to read it. During the meeting Cosby stated that he can help the Plaintiff with relocating if she wanted this.

32.     On or about November 13, 2020, Cosby informed Plaintiff that her appeal is rejected, and suggested she submit a complete Reasonable Accommodation application to Wells.

7

Cosby further accused Plaintiff of not fully performing her job responsibilities, providing a list of duties that she allegedly failed to complete, but which is not normally assigned to do in her job position.  Cosby further accused Plaintiff of disregarding her duties and deferring her duties to others in her office.  Cosby's accusations are further contradicted by Plaintiff's recent positive job evaluation, which Cosby signs.

33.     Plaintiff inquired about Cosby's earlier offer of relocation, but Cosby directed Plaintiff to complete the Reasonable Accommodation application and send it to Wells.

34.     During email communications with Cosby, Plaintiff learned that Wells was copied on these emails.  Dols made several attempts to reach Cosby to discuss the fact that Wells was copied on the emails and that it was unacceptable for Wells to review the emails since Plaintiff was accusing Wells of discriminating against the Plaintiff, but Cosby did not respond.

35.     Plaintiff emailed Cosby about the emails being shared with Wells, to which Cosby responded that he shares all his emails unless told not to.

36.     Plaintiff completed the Reasonable Accommodation form, attached supporting documentation from Dr. Berkowitz which specifies that Plaintiff suffers from Hashimoto's thyroiditis or Hashimoto's Disease and submitted it to Wells and Lau.

37.     Wells rejected Plaintiff's request for reasonable accommodation.

38.     Plaintiff resubmitted the request, this time adding another form provided by the EEOC, completed by Dr. Berkowitz.  The Plaintiff was hesitant to submit this form because the doctor did not fully fill it out as the form is written for a person who has a physical or mental disability and not, as Plaintiff is, a person who has an autoimmune condition and who is simply trying to protect herself in a pandemic.

39.     Despite the sufficiency of the request, Wells rejected Plaintiff's reasonable accommodation request again, stating that granting the accommodation would require "removal of one or more essential job functions".  Wells required Plaintiff to return to work, and she returned on December 1, 2020.

40.     On or about November 20, 2020, Dols submitted a grievance to Luzzatto.  The grievance stated that the public affairs office, where the Plaintiff is employed, made a change to the conditions of the Plaintiff's employment without negotiating this with the union and thereby breaching the telework contract the union signed with the agency.

41.     Plaintiff requested that Wells and Lau remove her medical records from her work records.  Wells confirmed that he removed them, while Lau stated they cannot be removed but will be kept separately from Plaintiff's work records.

42.     On December 1, 2020, the Plaintiff returned to the office. While there, she was not provided two washable cloth face coverings and adequate cleaning materials, which she had to be provided with under the District's policy enforced in response to COVID-19.

43.     Plaintiff was also assigned to attend eight (8) field trip assignments to take photos, which she normally was never assigned, but they were rather done on a discretionary basis.  The first two weeks the Plaintiff was in the office, she did two (2) field trip assignments.  The Plaintiff asked Wells if she could use her own camera to save herself a trip to the office, and exposure on the subway, to get the office camera, but Wells told her she had to come to the office and use the work camera.

44.     On December 11, 2020, she went to the U.S. Military Academy ("USMA") at West Point and on December 15, 2020 she went to the Brookhaven National Lab on Long Island, New York.  She went to the USMA for a Ground Breaking Ceremony. There were other people taking

9

photos at this event who could have provided her the photos so she wouldn't have to make the trip. To the Plaintiff's surprise, on the day of the ceremony, a public affairs colleague showed up unexpectedly to also take photos. This was redundant and unnecessary.

45.     Plaintiff informed Wells that she can only travel using mass transportation and due to her health conditions, it places her in jeopardy, but in response, Wells assigned her field trips.

46.     Plaintiff informed Wells that she does not need to complete field trips since employees working on the projects have offered to send pictures to her. In response, Wells told Plaintiff that she must complete her work assignments and go on field trips.

47.     On another occasion, Plaintiff was assigned to complete a field trip with a co-worker who drove Plaintiff to a project in Long Island, New York.   The Plaintiff was uncomfortable during the whole trip to the worksite because Wells did not discuss with her ways to maximize her safety.  In an attempt to mitigate the danger, Plaintiff sat in the car with an open window, in the middle of winter.

48.     The Plaintiff had asked Wells how he planned to make her long car drive with her coworker safe for them both.  Wells provided no guidance and just said she could find her own way there or get her own car.  Wells is aware that Plaintiff doesn't drive.

49.     On or about December 8, 2020, Dols submitted a Safety Violation Grievance on behalf of Plaintiff to Wells.  The grievance stated that Wells violated a series of health protocols, specifically, not providing Plaintiff with washable face masks, and adequate cleaning materials in the office; requiring Plaintiff to drive long distances with a co-worker; and mandating that Plaintiff work in small, poorly ventilated, crowded office areas.  Wells was not enforcing the agency's maximum 25% occupancy policy.  The District put a SharePoint site in place to keep attendance

of who is coming into the office in order to maintain this 25% capacity. Wells did not instruct his staff to use this SharePoint site.

50.     On or about December 14, 2020, Dols submitted a Revised Safety Violation Grievance on behalf of Plaintiff to Wells. Since the first safety violation grievance, Wells provided Plaintiff with washable cloth masks but did not address Plaintiff's concerns about the danger of completing a field trip by riding with a co-worker in a car for a long-distance.

51.     On or about December 17, 2020, Dols held a phone meeting with Plaintiff, Wells, and Fernandez to address the concerns raised in the Safety Violation Grievance. Wells did not address the concerns raised. On or about December 22, 2020, Luzzatto sent an email to the District reminding them of the District COVID Guidelines. The heading of the email states – "We must protect each other." In the body of the email he states. "All supervisors are reminded of the "guidelines for determining required 'in-person execution of duties.' These guidelines explain when it is reasonable to require an employee to conduct in-person work in our current telework environment."

52.     On or about December 31, 2020, Dols submitted a Retaliation Grievance on behalf of the Plaintiff to Wells and a meeting was scheduled for January 12, 2021. This grievance included the fact that the Plaintiff was being ordered to perform many field trips to take photos when the photos could have been provided to her by project managers already on the location. In the past she did perform approximately two-three (2-3) field trips a year and they were based on her professional discretion. She normally obtained photos from project managers on the site. This is consistent with her position description, which also states that she is FLSA ("Fair Labor Standards Act") Exempt, indicating her job duties require discretion and independent judgement.

11

53.     On or about January 5, 2021, Wells responded to the Safety Violation Grievance, submitted on December 8, 2020, stating he did not violate any safety policies.

54.     On or about January 8, 2021, Luzzatto sent a video message to the employees of the New York district, informing them that if any employee does not feel comfortable working in the office, they should communicate with their supervisor about this.  On or about April 9, 2021 Luzzatto sent a video message to the district. He said that he was asked what should an employee do if their leader is being toxic. He said that they should discuss this with their leader or their "higher ups".

55.     The Plaintiff tried speaking to her supervisor and his superiors but was ignored.

56.     In this video message Luzzatto also stated that supervisors should be following the polices put in place and should not be bullying their staff to come into the office; and if staff are being bullied they should discuss it with their superior.  He also mentioned that recently there were several positive COVID cases in the district and at 26 Federal Plaza, but all of the people caught the virus at home and not in the office and this is because the safety policies put in place at the office are what are keeping people from catching the (corona)virus at work.

57.     On or about January 12, 2021, Dols forwarded Wells' response from January 5, 2021, to Cosby and Matthew Pride ("Pride"), Deputy Commander.

58.     , as well as informing them that Wells began adhering to the safety policies only after he was served with a grievance, and further advising them that some of the policies are still being violated.

59.     On or about January 12, 2021, Dols held a phone meeting with Plaintiff, Wells, and Fernandez regarding the Retaliation Grievance submitted to Wells on December 31, 2020. Wells was silent throughout this meeting as well.

60.     On or about January 13, 2021, Plaintiff filed a Complaint with the Equal Employment Opportunity Commission (EEOC).

61.     On or about January 14, 2021, Wells responded to the Retaliation Grievance, stating that he did not retaliate against Plaintiff.

62.     On or about January 20, 2021, Plaintiff had a medical appointment with Dr. Alexander Perkelvald, an Endocrinologist, who completed a Reasonable Accommodation form further supporting that Plaintiff suffers from Hashimoto's Disease, and also adding that she has a Pituitary Tumor in the brain that comprises her immunity, thus making her susceptible to COVID-19 complications, and thereby advising that Plaintiff  should work remotely.

63.     On or about January 20, 2021, Luzzatto informed the employees that he and Pride may have been exposed to COVID-19 since there was at least one (1) positive person in the conference room, the previous week and that they will be "quarantining for two (2) weeks" and working remotely.  Luzzatto waited a week to inform employees about this. What was strange is that Cosby did not provide the District with any specific details about this, such as where it happened and if the room was cleaned, like he had been doing with other exposures in the district.

64.     Throughout the pandemic, Cosby sent daily emails to the District indicating the number of COVID cases in the agency and office building and providing specific details about these cases.

65.     Based on knowledge and belief, Plaintiff saw Luzzatto that day in the conference room, not wearing a mask, and Plaintiff informed Wells that she may have been exposed to COVID-19. Wells dismissed Plaintiff's concerns.

66.     On or about January 21, 2021, Plaintiff filed for sick leave for the safety of herself and others. The Plaintiff indicated on her sick leave request – "I'm taking this leave to avoid

possible exposure to the COVID-19 virus."  Wells denied Plaintiff's sick leave and required her

to come to work the next day.  In the past, the Plaintiff's sick leave was never denied.  In fact, she

has submitted numerous sick leave requests in the past with no indication as to why she was taking

the leave and they were approved.

67.     On or about January 21, 2021, Plaintiff attended an EEOC interview conducted by

Ricardo Zaldana, an EEO Specialist in the New York District, and Christina Vila, a Vice President

of IFPTE Local 98, New York District.

68.     On or about January 21, 2021, Plaintiff resubmitted Reasonable Accommodation

request including doctor's notes from Perkevald to Wells and Lau.

69.     On or about January 25, 2021, Wells rejected Plaintiff's Reasonable

Accommodation request claiming that granting an accommodation would require removal of one

or more essential job functions. However, Wells declined to clarify which job functions would be

being removed if the accommodation is granted.  Wells further informed Plaintiff that she can

apply for another job in the district.  Wells gave the Plaintiff one week to apply for another job in

the district, outside of the public affairs office.

70.     The Department of the Army Standard Operating Procedures ("SOP") dated from

May 16, 2011, states that "1) that a Disability Program Manager "be proactive in locating and

considering possible accommodations, including appropriate resources for assistance" and 2) that

the decision- maker "actively participate in the interactive process with the requester to clarify the

request and obtain and exchange information" and 3) that management provides possible

accommodations. Wells did not reach out to Plaintiff to find a compromise on the accommodation.

Importantly, the Plaintiff was never provided this SOP by her EEOC Office.

71.     On or about January 26, 2021, Dols and Plaintiff held a meeting with Pride regarding Step 3 of the Safety Grievance.

72.     On or about January 28, 2021, Dols sent Cosby and Pride Union's response to Step 1 of the Retaliation against Plaintiff's Grievance.  Fernandez did nothing to remedy the situation.

73.     On or about February 1, 2021, Dols requested a meeting with Pride to discuss the denial of two (2) of Plaintiff's Reasonable Accommodations requested.

74.     On or about February 2, 2021, Zaldana provided Plaintiff a list of questions to answer pursuant to the grievance procedure.  The Plaintiff provided him a response to the questions.

75.     On or about February 3, 2021, Pride responded to Dols that Plaintiff was already instructed about how to proceed with the denials.

76.     On or about February 4, 2021, Plaintiff communicated with James D'Ambrosio ("D'Ambrosio"), public affairs specialist, who is a timekeeper for the office.  D'Ambrosio informed Plaintiff that their similarly situated co-worker, Vincent Elias ("Elias"), who was a Public Affairs Specialist, was not working in the office for two (2) months. D'Ambrosio further inquired from Wells about Elias' return and was informed that Elias will be out for another month.  Plaintiff was later informed that Elias retired on March 31, 2021. However, in May 2021, Plaintiff learned that Elias is not retired, but is still on sick leave.   In total, Elias was allowed (in a sense accommodated) to take approximately ten (10) months of sick leave.

77.     On or about February 8, 2021, Zaldana held a final interview for the Plaintiff and told her to submit her resume to Kelly Grant ("Grant"), Acting Director, Civilian Personnel Advisory Center for reassignment.

78.     Plaintiff reluctantly submitted her resume.

79.     On or about February 9, 2021, Zaldana conducted the final interview with Vila and Plaintiff and Zaldana advised Plaintiff and Vila that they were unable to resolve this issue, and if Plaintiff seeks to file an EEOC, she has 15 days to do so.  The Plaintiff asked Zaldana why Wells was accommodating Elias and Zaldana said that Wells said "Elias's leave was medically justifiable."

80.     On or about February 18, 2021, Plaintiff timely filed a formal EEOC complaint.

81.     On or about February 18, 2021, Cosby emailed a Detail job position to Plaintiff, directing her to work for the district's executive office under the supervision of Pride and Cosby, requiring Plaintiff to begin at the new assignment in a week.  Plaintiff informed Cosby that she will not be accepting the assignment.

82.     On or about February 23, 2021, Pride sent Plaintiff his Step 3 Decision for the Safety Violation Grievance, incorrectly determining that there was no violation.

83.     On or about February 23, 2021, Vila submitted a Denial without Discussion: Failure to Follow EEO SOP (Dated May 16, 2011) Grievance on behalf of Plaintiff to Pride, which was denied without discussion.

84.     On or about February 23, 2021, Zaldana sent Plaintiff a letter acknowledgment of the formal EEOC complaint.

85.     On or about February 25, 2021, Luzzatto informed employees about the COVID-19 vaccine becoming available to qualifying employees on March 11, 2021, at Fort Hamilton, Brooklyn.

86.     On or about March 2, 2021, EEO provided Plaintiff with the acceptance letter, a memorandum for requesting an investigator, and a file submitted to the investigator.  The

investigator informed Plaintiff that she will only be reviewing the complaint about denial of sick leave, and will not review the denials of reasonable accommodation.

87.     On or about March 2, 2021, Wells criticized Plaintiff's work on the Annual Civil Works Congressional Budget Briefing – an online district website project, which Plaintiff has been managing for twenty (20) years.  Specifically, Wells claimed that the format of the project fact sheets, which describe the agency's projects, on the briefing was inadequate. Plaintiff informed Wells that it is more important that the fact sheets be current then their format. Project managers are responsible for providing her current fact sheets for the briefing and they are usually very late, so there is little time to be concerned with the format. This had never been an issue with Wells in previous years.

88.     Because of Wells' comment, the Plaintiff chose to spend the entire weekend, reformatting over 100 project fact sheets and uploaded them online to the briefing.  She didn't put in overtime for this and was not paid. She was afraid to even mention getting overtime pay because of the relationship she has now with Wells.

89.     On or about March 6, 2021, Wells informed Plaintiff that he does not see any updates on the website, and wrongly claimed that Plaintiff was doing her work improperly and that the remaining team would have to fix Plaintiff's work.  Plaintiff informed Wells that the issue is with the server working slowly, preventing Wells from seeing the updates. Despite Wells' accusation, the website and briefing went live as scheduled, thereby demonstrating that Plaintiff, once again, acted properly.

90.     On or about March 9, 2021, Wells assigned Plaintiff to complete the following in one (1) week: complete a field trip to West Point, write three-four (3-4) articles, and copy him in every email she sends to people.

91.     Plaintiff informed Wells that such a field trip was impossible as scheduling a trip and interviews would take a week by itself and writing articles can take another 2-3 weeks since they also had to include photos. Wells instructed Plaintiff that she needed to complete the assignment in the time frame she was given. Wells was also requiring her to do the article interviews in-person at West Point and he timed out for her how long each interview should be. In the past, Plaintiff always conducted interviews by phone or email. Doing a trip to do in-person interviews is unsafe and unnecessary. Previously, Plaintiff never had to copy him on all of her emails.

92.     Before filing a reasonable accommodation request, Plaintiff was never assigned field trips, they were rather at her discretion, and was not given assignments requiring her to make numerous field trips in a short time frame.

93.     On or about March 9, 2021, Plaintiff emailed Wells and copied other staff, including Fernandez, Luzzatto, Pride and Cosby, requesting a two-week sick leave due to extreme anxiety she was suffering created by Wells' conduct.  Wells approved the leave.

94.     Fernandez who was copied on this email did nothing to remedy the situation. She and nobody from the District contacted the Plaintiff to see if she was okay after she immediately left the district in the middle of the day in a state of high anxiety.

95.     On or about March 10, 2021, Plaintiff visited Dr. Berkowitz who diagnosed Plaintiff with anxiety, as well as prescribed her medications, and recommended a counselor.

96.     On or about March 11, 2021, Lucille Greene ("Greene"), an EEO Investigator requested a list of witnesses for her to interview.

97.     Upon information and belief, Luzzatto sent a video message to the district stating that supervisors will receive training on Reasonable Accommodation requests.

98.     On or about March 11, 2021, Captain Keven Park, Deputy Resident Engineer for the Southern Resident Office, informed Plaintiff that he was assigned by Luzzatto to investigate a bullying claim and interview her.

99.     On or about March 24, 2021, Plaintiff and Dols had a meeting with Pride concerning Step 3 of the Retaliation Grievance.  Pride informed Plaintiff that he would provide an answer soon concerning providing Plaintiff relief.

100.     On or about March 30, 2021, Wells assigned another field trip to Plaintiff with a rigid deadline and still required her to copy him on all emails she has with people she communicates with to complete the assignment.

101.     On or about March 31, 2021, Pride denied Plaintiff a relief but informed her and Dols that supervisors will receive training on how to address Reasonable Accommodation requests because it is very timely and important training. Fernandez was copied on this email and did nothing to remedy the situation.

102.     On or about March 31, 2021, Plaintiff began mental health counseling with Olga Rothschild, a counselor, to address Plaintiff's anxiety and sleep issues induced by Defendants' actions and treatment.

103.     On or about April 6, 2021, Park interviewed Plaintiff with Dols in attendance to discuss the bullying in the workplace claim.

104.     On or about April 7, 2021, a mediation session took place, addressing both the Safety Violation Grievance and the Retaliation Grievance. The mediation session included Plaintiff, Wells, Fernandez, Pride, Cosby, Dols, and respective legal counsels. U.S. Corp's legal counsel stated that Plaintiff had a Detail work offered to her earlier, which she denied.  Plaintiff stated that once the Detail work will be complete, she will still return to her current position,

without reasonable accommodation. Plaintiff offered her solution for resolving the situation, having her be relocated to another office where she worked prior, an explanation for Cosby's accusations, return of her used sick leave, for Wells to receive retaliation training and a written apology. The U.S. Corps rejected Plaintiff's request, but in return offered her to work remotely for another 180 days, but complete field trips, return her sick leave pay and she must end all of her grievances.

105.    On or about April 9, 2021, Defendant Luzzatto informed the employees that there would now be a return of everyone to the office, slowly in the coming months.  He also stated that if any employee is suffering from a toxic environment at the workplace, then the employee is advised to reach out to their supervisor, EEO, and the union.  Defendant Luzzatto would eventually tell employees to try to come in one (1) day a pay period, but when new virus variants arrived, he told everyone to go back to Maximum Telework.  However, the Plaintiff was still required to go to the office in-person.

106.    On or about April 12, 2021, Greene provided Plaintiff with an amended investigation letter.

107.     On or about April 14, 2021, the U.S. Corps' legal counsel sent an agreement to Plaintiff, offering the same options provided during the mediation, but dropped in the fact that she must discontinue pursuing her EEO Complaint, which was not discussed during the mediation. Plaintiff rejected the agreement.

108.    On or about April 16, 2021, Luzzatto sent out his weekly video to the District and stated that he received an email from an anonymous employee who is teleworking and who is very concerned about eventually coming back to the office.  Luzzatto said he takes these emails to heart and he read a quote from the email.  The individual said, " I am reminded in times of uncertainty,

of resiliency, will only prevail when we are guided in truth and bold, with communal advocacy and love. We must look out for each other, as we have done in post hurricane Katrina, Sandy, Maria." Later in Defendant Luzzatto's video message he says he wants employees to take care of each other and wants employees to express to their supervisors how they feel about things.

109. On or about April 16, 2021, Greene interviewed Plaintiff regarding the sick leave investigation.

110. On or about April 20, 2021, Plaintiff informed Wells that the field trip she was scheduled to attend the following day was unnecessary because people working on the project site informed the Plaintiff that they will send her all the photos. Plaintiff again expressed her concern about her health during the pandemic. In addition, the Plaintiff expressed that she was scheduled for an emergency medical procedure that coming weekend and her immunity was low and that she probably shouldn't be at work anyway, but she was at work to conserve her dwindling sick leave time.

111. When the Plaintiff didn't get a response from Wells after several tries, she cancelled her trip and was reprimanded for doing this it by Wells and Pride. In the past, Wells had always respected the Plaintiff's professional judgement in situations like these.

112. On or about April 22, 2021, Plaintiff submitted a signed declaration to Greene.

113. On or about May 4, 2021, the union informed the Corp's attorney that Plaintiff rejected the settlement agreement, and of Plaintiff's intent to move to arbitration.

114. On or about May 5, 2021, Wells inquired about a project he assigned to Plaintiff days before and made false statements that she is taking a long time to complete it.

115. On or about May 24, 2021, the Plaintiff asked Wells if she can work from home for a week because a few days before she had a medical procedure that doesn't allow her to carry

heavy objects – such as a large laptop to and from work, up and down stairs in the subway (which she has to do every day she works in the office).  Wells requested medical information from her and her doctor provided him a letter.

116.    On or about May 25, 2021, Greene provided the Plaintiff with the Wells Declaration for rebuttal.  The Plaintiff found several things incorrect in his declaration.  One of the most glaring remarks Wells made was that he said he denied her sick leave request in November 2020 because he was planning on sending the Plaintiff to Albany to cover a project. This was the first time the Plaintiff heard of this. The Plaintiff wasn't even back working in the office at the time to do such a trip.  The Plaintiff returned to the office on December 1, 2020.

117.    On or about May 26, 2021, Wells gives the Plaintiff her 2021 annual review and informs her that he is giving her a rating of "3" (Fully Successful).  For twenty (20) years, the Plaintiff received a rating of "5" (Outstanding).  When she asked Wells why her rating was lowered, he didn't provide a response. During the Plaintiff's required verbal mid-year review, of which Wells didn't conduct with her, he gave no indication that he was planning to lower her rating to give her a chance to correct this.

118.    When she asked Fernandez, she said that since Plaintiff's rating is not "Unacceptable" there was nothing she could do and Wells doesn't have to give an explanation. All she could suggest was that she express her concerns to Wells to come to a shared understanding.

119.    Fernandez also recommended filing a union grievance.  This lowered rating lowered the amount of money the Plaintiff received in her annual bonus and affected her chances of getting a new job, where the rating number is taken seriously by government agencies seeking employees.  However, Plaintiff continues to receive praise for her work from Luzzatto and others

in the agency to this day.  She also received a public affairs team award as part of the public affairs team for their work during the pandemic.

120.   On or about June 23, 2021, the arbitration took place for the Grievance against Luzzatto for letting the Public Affairs Office, where the Plaintiff is employed, make a change to the conditions of the Plaintiff's employment without negotiating this with the union and thereby breaching the telework contract the union signed with the agency.  The Plaintiff took part in the arbitration as a witness. Luzzatto and Wells didn't attend. Wells provided an affidavit.  In his affidavit, to support his claim that public affairs specialists should only publish photos they take, he stated that the Plaintiff published an unauthorized photo that was acquired by a project manager causing a security risk.  However, the photo was taken by the Plaintiff's public affairs colleague – D'Ambrosio - and placed in a folder for the Plaintiff to use.

121.   On or about August 18, 2021, the Plaintiff was being told by Wells to make a field trip to the U.S. Military Academy at West Point to take photos at a ribbon cutting ceremony. There were other people taking photos at this event who could have provided her the photos so she wouldn't have to make the trip.

122.   The Plaintiff reminded Wells of the District's directive for people to work from home to protect themselves, especially because of the current Delta variant. Wells completely ignored her concern and told her – "Please execute the assignment as directed."

123.   To Plaintiff's surprise, on the day of the West Point ribbon cutting ceremony, a Public Affairs colleague arrived unexpectedly to also take photos. This was entirely redundant and unnecessary.

124.    On or about September 16, 2021, Plaintiff noticed that a non-Public Affairs employee was allowed to take photos of a harbor inspection boat tour and have the Public Affairs office post them on the District's social media sites.

125.    Upon information and belief, Wells stated in his affidavit on June 17, 2021, that "getting pictures from other sources such as project managers run the risk of PAO "Public Affairs Office", being provided with images that don't support our mission and increase the prospect of mission failure. In addition, asking another office to take pictures for Public Affairs means we're delegating our work to other offices and that's an unacceptable business practice."

126.    On or about October 26, 2021, a Grand Jury Subpoena was issued in the United States District Court, Southern District of New York by the United States Department of Justice to "2 Bourkes PR," and served upon Plaintiff. The subpoena requested copies of all records pertaining to Plaintiff from the period of January 2018 to the present. To date, Plaintiff does not know nor was she provided any information whatsoever by Defendants concerning any investigation or proceeding pertaining to the issued subpoena. Upon information and belief, the subpoena was issued in a further attempt to harass, humiliate and intimidate Plaintiff.

127.    On or about November 15, 2021, Luzzatto sent an email to the District stating that he spent several hours in an enclosed car with a COVID positive colleague and luckily, because he was vaccinated, he didn't get sick. He said, "I don't think this would have been the same turnout if we had not all been vaccinated". Plaintiff, however, was required to spend several hours in a car with a colleague before vaccines were available.

128.    Throughout the pandemic, Plaintiff was assigned five (5) additional articles where Plaintiff obtained photographs from project managers which were acceptable to Wells, despite his prior statement that "getting pictures from other sources such as project managers run the risk of

24

PAO being provided with images that don't support our mission and increase the prospect of mission failure. In addition, asking another office to take pictures for Public Affairs means we're delegating our work to other offices and that's an unacceptable business practice."

129.    On or about February 24, 2022, Plaintiff was working in the office with only one (1) other employee, Hector Mosley. Plaintiff entered the office's lunch area, and noticed a paper bag with a note stating, "free food for the taking". Plaintiff picked up a bag of candy and ate the whole bag at her desk while working.

130.    Only after consuming the entire bag of candy did Plaintiff notice that cannabis was among the ingredients.

131.    Shortly after consumption, Plaintiff began feeling anxious and disoriented. Plaintiff entered the lunch area and sought help from another employee, Rifat Salim ("Salim"). While awaiting help, Plaintiff began feeling the side effects from consuming a large amount of cannabis, feeling even more disoriented and anxious. Plaintiff was taken to the hospital via an ambulance. Plaintiff began experiencing anxiety, disorientation, and hallucinations.

132.    Plaintiff spent one (1) day in the hospital. During this time, she could not use her phone due to her symptoms. Wells did not reach out to Plaintiff's emergency contacts, as required by the agency, so Plaintiff's family members were unaware of where she was. Eventually, they were made aware of where she was because a friend eventually found out and informed them.

133.    At the hospital, Plaintiff was treated with sedatives and to date still suffers from heart palpitations as a result of the symptoms she had from consuming candies containing cannabis.

134.    Plaintiff was and continues to be traumatized by her unwitting and unintentional ingestion of large amounts of cannabis while performing her job duties and responsibilities at her

office on February 24, 2022. She continues to require, and continues to receive, medical and psychiatric treatment for the injuries she sustained on February 24, 2022.

135.   The U.S. Corps has no contract with the building to provide medical care for employees if they get ill while working in the office.

136.   Plaintiff was provided with an administrative leave for February 25, 2022, but Defendants denied her an additional administrative day for February 28, 2022, requiring her to come back to work.  Since Plaintiff was still recovering, she was forced to use her sick leave, even though the accident happened on the agency's clock.  Plaintiff was forced to use her sick leave because she was unable to work from home on February 28th because she didn't have her work computer at home.

137.   Plaintiff later learned that the cannabis candy was found in employee, Johnny Chan's, work desk during a cleanout, since he retired almost a year ago. Instead of throwing away the food, it was placed in the lunch area.

138.   Plaintiff continues to suffer from health conditions as a result of Defendants' discriminatory and harassing treatment as well as from her consuming cannabis candies.

### FIRST CAUSE OF ACTION
**(Retaliation - Federal Claims pursuant to ADA - Against U.S. Army Corps Of Engineers, New York District, Matthew Luzzatto, In His Official Capacity As District Commander, and Matthew Cosby, In His Official Capacity As Chief Of Staff, U.S. Army Corps Of Engineers, New York District)**

139.   Plaintiff hereby repeats, re-alleges, and incorporates each and every allegation contained in the above paragraphs of this Complaint as though fully set forth in this paragraph of the Complaint.

140.   Plaintiff was subjected to retaliation in that, after she filed a Reasonable Accommodation request, she was given numerous field trips and challenging work assignments that she normally did not receive prior to filing the Reasonable Accommodation request.

141.   Defendants' retaliatory conduct substantially changed the terms and conditions of Plaintiff's employment.

142.   As a result of the Defendants' retaliatory conduct, Plaintiff has incurred and will continue to incur damages, including but not limited to lost income, and legal fees.

143.   As a result of Defendants' retaliatory conduct, Plaintiff has suffered and will continue to suffer emotional distress, lingering health conditions, and loss of quality of life.

## SECOND CAUSE OF ACTION
### (Retaliation - New York State Claim under the Executive Law - Against U.S. Army Corps Of Engineers, New York District, Matthew Luzzatto, In His Official Capacity As District Commander, and Matthew Cosby, In His Official Capacity As Chief Of Staff, U.S. Army Corps Of Engineers, New York District)

144.   Plaintiff hereby repeats, re-alleges, and incorporates each and every allegation contained by reference herein of this Complaint as though fully set forth in this paragraph of the Complaint.

145.   Plaintiff was subjected to retaliation in that, after she filed a Reasonable Accommodation request, she was given numerous field trips and challenging work assignments that she normally did not receive prior to filing the Reasonable Accommodation request.

146.   Defendants' retaliatory conduct substantially changed the terms and conditions of Plaintiff's employment.

147.   As a result of the Defendants' retaliatory conduct, Plaintiff has incurred and will continue to incur damages, including but not limited to lost income, and legal fees.

148.   As a result of Defendants' retaliatory conduct, Plaintiff has suffered and will continue to suffer emotional distress, lingering health conditions, and loss of quality of life.

**THIRD CAUSE OF ACTION**
**(Retaliation -New York City Claim pursuant to the  Administrative Code -**
**Against U.S. Army Corps Of Engineers, New York District, Matthew**
**Luzzatto, In His Official Capacity As District Commander, and Matthew**
**Cosby, In His Official Capacity As Chief Of Staff, U.S. Army Corps Of**
**Engineers, New York District)**

149.   Plaintiff hereby repeats, re-alleges, and incorporates each and every allegation contained by reference herein of this Complaint as though fully set forth in this paragraph of the Complaint.

150.   Plaintiff was subjected to retaliation in that, after she filed a Reasonable Accommodation request, she was given numerous field trips and challenging work assignments that she normally did not receive prior to filing the Reasonable Accommodation request.

151.   Defendants' retaliatory conduct substantially changed the terms and conditions of Plaintiff's employment.

152.   As a result of the Defendants' retaliatory conduct, Plaintiff has incurred and will continue to incur damages, including but not limited to lost income, and legal fees.

153.   As a result of Defendants' retaliatory conduct, Plaintiff has suffered and will continue to suffer emotional distress, lingering health conditions, and loss of quality of life.

**FOURTH CAUSE OF ACTION**
**(Federal Claim:  Discrimination Based Upon Disability in Violation of the**
**Americans With Disabilities Act (ADA) - Against U.S. Army Corps Of**
**Engineers, New York District, Matthew Luzzatto, In His Official Capacity**
**As District Commander, and Matthew Cosby, In His Official Capacity As**
**Chief Of Staff, U.S. Army Corps Of Engineers, New York District)**

154.   Plaintiff hereby repeats, re-alleges, and incorporates each and every allegation contained by reference herein of this Complaint as though fully set forth in this paragraph of the Complaint.

155.   Defendants violated ADA, 42 U.S.C. § 12122 *et seq*. by engaging in, perpetuating and permitting supervisory and decision making employees to engage in discriminatory employment practices in which Plaintiff's disability was the motivating, if not the only, factor, such practices include but are not limited to denial of a reasonable accommodation.

156.   As a result of the foregoing, Plaintiff has incurred substantial damages measured by loss of income due to limited ability to work overtime, the physical and mental anguish, pain and suffering, emotional distress and loss of enjoyment of life

157.   Plaintiff continues to suffer and to incur additional damages by reason of the foregoing.

**FIFTH CAUSE OF ACTION**
**(New York State Claim:  Discrimination on the Basis of Disability**
**in Violation of the New York State Executive Law § 296, *et seq*. - Against U.S.**
**Army Corps Of Engineers, New York District, Matthew Luzzatto, In His**
**Official Capacity As District Commander, and Matthew Cosby, In His**
**Official Capacity As Chief Of Staff, U.S. Army Corps Of Engineers, New**
**York District)**

158.   Plaintiff hereby repeats, re-alleges, and incorporates each and every allegation contained by reference herein of this Complaint as though fully set forth in this paragraph of the Complaint.

159.   Defendants violated the Executive Law §296, *et seq.* by engaging in, perpetuating and permitting supervisory and decision-making employees to engage in discriminatory employment practices in which Plaintiff's disability was the motivating, if not the only, factor, such practices include but are not limited to denial of a reasonable accommodation.

160.   As a result of the foregoing, Plaintiff has incurred substantial damages measured by loss of income due to limited ability to work overtime, the physical and mental anguish, pain and suffering, emotional distress and loss of enjoyment of life.

**SIXTH CAUSE OF ACTION**
**(New York City Claim: Discrimination on the Basis of Disability**
**in Violation of the New York City Administrative Code § 8-107, *et seq.* –**
**Against U.S. Army Corps Of Engineers, New York District, Matthew**
**Luzzatto, In His Official Capacity As District Commander, and Matthew**
**Cosby, In His Official Capacity As Chief Of Staff, U.S. Army Corps Of**
**Engineers, New York District)**

161.   Plaintiff hereby repeats, re-alleges, and incorporates each and every allegation contained by reference herein of this Complaint as though fully set forth in this paragraph of the Complaint.

162.   Defendants violated the Administrative Code §8-107, *et seq.* by engaging in, perpetuating and permitting supervisory and decision-making employees to engage in discriminatory employment practices in which Plaintiff's disability was the motivating, if not the only, factor, such practices include but are not limited to denial of a reasonable accommodation.

163.   As a result of the foregoing, Plaintiff has incurred substantial damages measured by loss of income due to limited ability to work overtime, the physical and mental anguish, pain and suffering, emotional distress and loss of enjoyment of life.

## SEVENTH CAUSE OF ACTION
### (Violation of the ADA- Failure to Accommodate - Against U.S. Army Corps Of Engineers, New York District, Matthew Luzzatto, In His Official Capacity As District Commander, and Matthew Cosby, In His Official Capacity As Chief Of Staff, U.S. Army Corps Of Engineers, New York District)

164.   Plaintiff hereby repeats, re-alleges, and incorporates each and every allegation contained in the above paragraphs of this Complaint as though fully set forth in this paragraph of the Complaint.

165.   The ADA prohibits discrimination on the basis of disability, among other things.

166.   Discrimination under the ADA includes failure to make reasonable accommodations for disabled individuals.

167.   When the Defendants refused to provide a reasonable accommodation in response to Plaintiff's requests, they violated the ADA.

168.   The reasonable accommodation requested by Plaintiff does not impose an undue hardship on Defendants.

169.   As a result of the Defendants' discriminatory and retaliatory conduct, Plaintiff has incurred and will continue to incur damages, including but not limited to lost income, reduced pension benefits, and legal fees.

## EIGHTH CAUSE OF ACTION
### (Violation of The New York State Human Rights Law(s) - Against U.S. Army Corps Of Engineers, New York District, Matthew Luzzatto, In His Official Capacity As District Commander, and Matthew Cosby, In His Official Capacity As Chief Of Staff, U.S. Army Corps Of Engineers, New York District)

170.   Plaintiff hereby repeats, re-alleges, and incorporates each and every allegation contained in the above paragraphs of this Complaint as though fully set forth in this paragraph of the Complaint.

171.   The New York State Human Rights Law(s) prohibits discrimination on the basis of disability, among other things.

172.   Discrimination under the New York State Human Rights Law(s) includes failure to make reasonable accommodations for disabled individuals.

173.   When the Defendants refused to provide a reasonable accommodation in response to Plaintiff's requests, they violated the New York State Human Rights Law(s).

174.   The reasonable accommodation requested by Plaintiff does not impose an undue hardship on Defendants.

175.   As a result of the Defendants' discriminatory and retaliatory conduct, Plaintiff has incurred and will continue to incur damages, including but not limited to lost income, reduced pension benefits, and legal fees.

## NINTH CAUSE OF ACTION
### (Violation of The New York City Human Rights Law(s) - Against U.S. Army Corps Of Engineers, New York District, Matthew Luzzatto, In His Official Capacity As District Commander, and Matthew Cosby, In His Official Capacity As Chief Of Staff, U.S. Army Corps Of Engineers, New York District)

176.   Plaintiff hereby repeats, re-alleges, and incorporates each and every allegation contained in the above paragraphs of this Complaint as though fully set forth in this paragraph of the Complaint.

177.   The New York City Human Rights Law(s) prohibits discrimination on the basis of disability, among other things.

178.   Discrimination under the New York City Human Rights Law(s) includes failure to make reasonable accommodations for disabled individuals.

179.   When the Defendants refused to provide a reasonable accommodation in response to Plaintiff's requests, they violated the New York City Human Rights Law(s).

180.   The reasonable accommodation requested by Plaintiff does not impose an undue hardship on Defendants.

181.   As a result of the Defendants' discriminatory and retaliatory conduct, Plaintiff has incurred and will continue to incur damages, including but not limited to lost income, reduced pension benefits, and legal fees.

**TENTH CAUSE OF ACTION**
**(Hostile Work Environment- Federal Claim- Against U.S. Army Corps Of Engineers, New York District, Matthew Luzzatto, In His Official Capacity As District Commander, and Matthew Cosby, In His Official Capacity As Chief Of Staff, U.S. Army Corps Of Engineers, New York District))**

182.   Plaintiff hereby repeats, re-alleges, and incorporates each and every allegation contained in the above paragraphs of this Complaint as though fully set forth in this paragraph of the Complaint.

183.   Defendants created a hostile work environment for Plaintiff, when they created an objectively abusive work environment for Plaintiff, which altered the conditions of Plaintiff's employment, in an attempt to marginalize her within the Public Affairs Office.

184.   Furthermore, by reason of the continuous nature of Defendants' hostile and discriminatory treatment of Plaintiff, which persisted throughout the relevant periods mentioned hereinabove, Plaintiff is entitled to the application of the continuing violations doctrine to all violations alleged herein as the actions of Defendants continue to have an adverse and prejudicial impact on Plaintiff.

185.   As a result of Defendants harassing conduct, Plaintiff has incurred, and will continue to incur, damages thereby, but not limited to back pay, forward pay, a decreased pension, and attorneys' fees.

186.   As a result of Defendants' harassing conduct, Plaintiff has suffered and will continue to suffer mental anguish, emotional distress, and loss of enjoyment of life; and has incurred and will incur damages thereby.

**ELEVENTH CAUSE OF ACTION**
**(Hostile Work Environment- New York State Claim - Against U.S. Army Corps Of Engineers, New York District, Matthew Luzzatto, In His Official Capacity As District Commander, and Matthew Cosby, In His Official Capacity As Chief Of Staff, U.S. Army Corps Of Engineers, New York District)**

187.   Plaintiff hereby repeats, re-alleges, and incorporates each and every allegation contained in the above paragraphs of this Complaint as though fully set forth in this paragraph of the Complaint.

188.   Defendants created a hostile work environment for Plaintiff, when they created an objectively abusive work environment for Plaintiff, which altered the conditions of Plaintiff's employment, in an attempt to marginalize her within the Public Affairs Office, in violation of New York State Human Rights Law; Executive Law §296(1)(a).

189.   Furthermore, by reason of the continuous nature of Defendants' hostile and discriminatory treatment of Plaintiff, which persisted throughout the relevant periods mentioned hereinabove, Plaintiff is entitled to the application of the continuing violations doctrine to all violations alleged herein as the actions of Defendants continue to have an adverse and prejudicial impact on Plaintiff.

190.   As a result of Defendants harassing conduct, Plaintiff has incurred, and will continue to incur, damages thereby, but not limited to sick leave pay and attorneys' fees.

191.   As a result of Defendants' harassing conduct, Plaintiff has suffered and will continue to suffer mental anguish, emotional distress, and loss of enjoyment of life; and has incurred and will incur damages thereby.

## TWELFTH CAUSE OF ACTION
### (Hostile Work Environment- New York City Claim - Against U.S. Army Corps Of Engineers, New York District, Matthew Luzzatto, In His Official Capacity As District Commander, and Matthew Cosby, In His Official Capacity As Chief Of Staff, U.S. Army Corps Of Engineers, New York District)

192.   Plaintiff hereby repeats, re-alleges, and incorporates each and every allegation contained in the above paragraphs of this Complaint as though fully set forth in this paragraph of the Complaint.

193.   Defendants created a hostile work environment for Plaintiff, when they created an objectively abusive work environment for Plaintiff, which altered the conditions of Plaintiff's employment, in an attempt to marginalize her within the Public Affairs Office, in violation of New York City Human Rights Law §8-101 *et seq.*

194.   Furthermore, by reason of the continuous nature of Defendants' hostile and discriminatory treatment of Plaintiff, which persisted throughout the relevant periods mentioned hereinabove, Plaintiff is entitled to the application of the continuing violations doctrine to all violations alleged herein as the actions of Defendants continue to have an adverse and prejudicial impact on Plaintiff.

195.   As a result of Defendants harassing conduct, Plaintiff has incurred, and will continue to incur, damages thereby, but not limited to sick leave pay and attorneys' fees.

196.   As a result of Defendants' harassing conduct, Plaintiff has suffered and will continue to suffer mental anguish, emotional distress, and loss of enjoyment of life; and has incurred and will incur damages thereby.

197.   As a result of Defendants' discriminatory and retaliatory conduct, Plaintiff has suffered and will continue to suffer emotional distress and loss of quality of life.

**WHEREFORE**, Plaintiff prays that judgment be entered against Defendants, jointly and severally, awarding Plaintiff compensation and other damages in the form of back pay, front pay, and other monies and benefits unlawfully denied to Plaintiff, as well as for emotional distress, permanent damages to Plaintiff's emotional/mental well-being, loss of enjoyment of life, including pain and suffering, shame and humiliation.

198.   On the First Cause of Action, judgment against Defendants for compensatory damages and attorneys' fees, in an exact amount to be determined at trial;

199.   On the Second Cause of Action, judgment against Defendants for compensatory damages and attorneys' fees, in an exact amount to be determined at trial;

200.   On the Third Cause of Action, judgment against Defendants for compensatory damages and attorneys' fees, in an exact amount to be determined at trial;

201.   On the Fourth Cause of Action, judgment against Defendants for compensatory damages and attorneys' fees, in an exact amount to be determined at trial;

202.   On the Fifth Cause of Action, judgment against Defendants for compensatory damages and attorneys' fees, in an exact amount to be determined at trial;

203.   On the Sixth Cause of Action, judgment against Defendants for compensatory damages and attorneys' fees, in an exact amount to be determined at trial;

204.   On the Seventh Cause of Action, judgment against Defendants for compensatory damages and attorneys' fees, in an exact amount to be determined at trial;

205.   On the Eighth Cause of Action, judgment against Defendants for compensatory damages and attorneys' fees, in an exact amount to be determined at trial;

206.   On the Ninth Cause of Action, judgment against Defendants for compensatory damages and attorneys' fees, in an exact amount to be determined at trial; and

207.   On the Tenth Cause of Action, judgment against Defendants for compensatory damages and attorneys' fees, in an exact amount to be determined at trial.

208.   On the Eleventh Cause of Action, judgment against Defendants for compensatory damages and attorneys' fees, in an exact amount to be determined at trial.

209.   On the Twelfth Cause of Action, judgment against Defendants for compensatory damages and attorneys' fees, in an exact amount to be determined at trial.

That Plaintiff have such other, further, and different relief as the Court deem just, proper, and equitable in the circumstances, together with interest on all Causes of Action, attorney's fees, and costs and disbursements in this action.

Dated: New York, New York
         April 29, 2022

                                     BALLON STOLL P.C.

                                     By:____*s/Marshall Bellovin*_____
                                             Marshall B. Bellovin, Esq. (MB5508)
                                             *Attorneys for Plaintiff*
                                             810 Seventh Avenue, Suite 405
                                             New York, New York, 10019
                                             212-575-7900