UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Joanne Castagna,<br><br>            Plaintiff,<br><br>-against-<br><br>Daniel P. Driscoll, Secretary of the Army,<br><br>            Defendant. | 1:22-cv-03503 (SDA)<br><br>**OPINION AND ORDER** |

**STEWART D. AARON, UNITED STATES MAGISTRATE JUDGE:**

Plaintiff Joanne Castagna ("Plaintiff") brings this action pursuant to the Rehabilitation Act of 1973, 29 U.S.C. § 704 *et seq*. ("Rehabilitation Act"), alleging that she was discriminated against because of her disability when she was denied leave. (Second Am. Compl. ("SAC"), ECF No. 46.) Pending before the Court is a motion for summary judgment by defendant Secretary of the Army Daniel P. Driscoll ("Defendant"), pursuant to Rule 56 of the Federal Rules of Civil Procedure. (Def.'s Mot. for Summ. J., ECF No. 75.) For the reasons set forth below, Defendant's motion is GRANTED.

**BACKGROUND**

**I.  Defendant's 56.1 Statement, Plaintiff's Response And Plaintiff's Counterstatement**

In accordance with Local Rule 56.1, Defendant submitted a Statement of Undisputed Material Facts. (Def.'s 56.1, ECF No. 80.) Plaintiff responded to each paragraph in Defendant's 56.1 Statement, but for many of the paragraphs did not "admit" or "deny" Defendant's

statements as required by the Local Civil Rule 56.1(b).[1] (*See* Pl.'s Resp. to Def.'s 56.1, ECF No. 88.) Several of Plaintiff's responses also run afoul of the Local Civil Rule 56.1 because they cite only to the SAC and not to admissible evidence in the record. *See* Fed. R. Civ. P. 56(c); S.D.N.Y. Local Civ. R. 56.1(d) ("Each statement by the movant or opponent under Rule 56.1(a) and (b), including each statement denying and controverting any statement of material fact, must be followed by citation to evidence that would be admissible and set forth as required by Fed. R. Civ. P. 56(c).").

Pursuant to Rule 56(e), "[i]f a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may: (1) give an opportunity to properly support or address the fact; (2) consider the fact undisputed for purposes of the motion; (3) grant summary judgment if the motion and supporting materials — including the facts considered undisputed — show that the movant is entitled to it; or (4) issue any other appropriate order." Fed. R. Civ. P. 56(e). Moreover, Local Civil Rule 56.1(c) provides that "[e]ach numbered paragraph in the statement of material facts set forth in the statement required to be served by the moving party will be deemed to be admitted for purposes of the motion unless specifically denied and controverted by a correspondingly numbered paragraph in the statement required to be served by the opposing party." S.D.N.Y. Local Civ. R. 56.1(c). Thus, the Court considers Defendant's statements that are not specifically controverted by Plaintiff to be deemed admitted for purposes of Defendant's motion. *See id.; see also Nance v. N. Y. Pub. Int. Rsch. Grp. Fund, Inc.*, No. 23-CV-03030 (MKV), 2025 WL 965883, at *5 (S.D.N.Y. Mar. 31, 2025) (citing *Giannullo v. City of New York*, 322 F.3d 139, 140 (2d Cir. 2003) ("If the opposing party . . .

---

[1] "The papers opposing a motion for summary judgment must include a correspondingly numbered paragraph admitting or denying, and otherwise responding to, each numbered paragraph in the statement of the moving party[.]" Local Civ. R. 56.1(b).

fails to controvert a fact so set forth in the moving party's Rule 56.1 statement, that fact will be deemed admitted.")).

Plaintiff also includes in her response a 98-paragraph "Counterstatement of Material Facts[.]" (Pl.'s Resp. to Def.'s 56.1 at pp. 13-24.) Pursuant to Local Civil Rule 56.1(b), a party opposing summary judgment may include "if necessary, additional paragraphs containing a separate, short and concise statement of additional material facts as to which it is contended that there exists a genuine issue to be tried[.]" Local Civ. R. 56.1(b). "[T]he counterstatement permitted by Local Rule 56.1(b) is for additional material facts [a plaintiff] believe[s] to be in dispute, not argument or other facts [the plaintiff] find[s] helpful." *Estevez v. Berkeley Coll.*, No. 18-CV-10350 (CS), 2021 WL 3115452, at *10 (S.D.N.Y. July 19, 2021), *aff'd*, 2022 WL 16843460 (2d Cir. Nov. 10, 2022); *see also Ostreicher v. Chase Bank USA, N.A.*, No. 19-CV-08175 (CS), 2020 WL 6809059, at *1 n.1 (S.D.N.Y. Nov. 19, 2020) ("There is no provision for a responsive 56.1 Statement to include additional facts that are not in dispute but that a party opposing summary judgment simply thinks are important; any additional facts should be confined to material facts in dispute."). The Court agrees with Defendant (*see* Def.'s Reply Mem., ECF No. 92, at 4) that many of the facts presented are unrelated to the claims remaining in this case. The remaining facts appear to be facts that Plaintiff finds helpful to her case. Accordingly, the Court does not consider Plaintiff's Counterstatement.

## II.     Factual Background

Since 2012, Plaintiff has worked as a Public Affairs Specialist with the United States Army Corps of Engineers (the "Corps") in the New York District. (Def.'s 56.1 ¶ 1.) Since at least 2013, Plaintiff's supervisor has been Kenneth Wells ("Wells"). (*Id.* ¶ 2; Pl.'s Resp. Def.'s 56.1 ¶ 2.) Wells

became the New York District's Chief of Public Affairs in 2013. (Pl.'s Resp. Def.'s 56.1 ¶ 2; *see also* Wells Decl., ECF No. 79, ¶ 2.) As Chief, Wells is responsible for managing external and internal affairs for the Corps at the New York District, overseeing assignments for public affairs specialists, and approving the time sheets and requests for annual or sick leave for public affairs specialists, including Plaintiff. (Def.'s 56.1 ¶ 3.)

Beginning in March 2020, due to the COVID-19 pandemic, Corps employees in the New York District were allowed to work remotely from home one hundred percent of the time. (Def.'s 56.1 ¶ 4.) In or around September 2020, the New York District Commander determined that all Public Affairs Office ("PAO") staff must return to the office. (*Id.* ¶ 5.) Thereafter, Wells implemented a staggered schedule so that not all employees were in the office on the same days. (*Id.* ¶ 6.) Plaintiff was part of the PAO staff required to return to the office on a staggered schedule. (Def.'s 56.1 ¶ 7; Pl.'s Resp. Def.'s 56.1 ¶ 7.) From September 2020 through November 2020, Plaintiff continued to work remotely one hundred percent of the time. (Def.'s 56.1 ¶ 8; Pl.'s Resp. Def.'s 56.1 ¶ 8.)

On November 5, 2020, Plaintiff requested to take three days of annual leave the following week: four hours of leave on November 10, 2020, eight hours of leave on November 12, 2020, and eight hours of leave on November 13, 2020. (Def.'s 56.1 ¶ 14; Pl.'s Resp. Def.'s 56.1 ¶ 14.) On her leave request form, Plaintiff stated that she requested to take annual leave because she "d[id not] feel comfortable travelling to work in the context of the current pandemic." (Def.'s 56.1 ¶ 15; Pl.'s Resp. Def.'s 56.1 ¶ 15.) On November 6, 2020, Wells denied Plaintiff's request to take annual leave based upon the mission needs of the Corps and the PAO's ability to meet upcoming tasks. (Def.'s 56.1 ¶ 16; Pl.'s Resp. Def.'s 56.1 ¶ 16.) However, Plaintiff was allowed to

4

take four hours of sick leave on November 10, 2020 in order to attend a scheduled doctor's appointment. (Def.'s 56.1 ¶ 19; Pl.'s Resp. Def.'s 56.1 ¶ 19.) Plaintiff also was permitted to work remotely for the remainder of the month. (Def.'s 56.1 ¶ 20; Pl.'s Resp. Def.'s 56.1 ¶ 20.)

In December 2020 and January 2021, Plaintiff typically was required to go into the office two days per week. (Def.'s 56.1 ¶ 25.) On January 20, 2021, the New York District Commander, Colonel Matthew Luzzatto ("Colonel Luzzatto"), emailed employees of the Corps to inform them that he had been in contact with someone who tested positive for COVID-19 the week before and that he and the New York District Deputy Commander, Lieutenant Colonel Matthew Pride, who was also exposed, would be quarantining. (1/20/21 Emails Part 1, Wells Decl. Ex. F, at USACE_000842-43.) In response, Plaintiff emailed Wells stating that she believed she may have been exposed to the virus because she had been a few feet away from Colonel Luzzatto the week before and asking him what he wanted her to do about it, noting that she was uncomfortable going into the office. (*Id.* at USACE_000841-42.) After confirming that Plaintiff did not come into contact with Colonel Luzzatto after his exposure, Wells acknowledged Plaintiff's concerns about coming into the office, but told Plaintiff that the schedule remained unchanged. (*Id*. at USACE_000840-41.)

Later that evening, Plaintiff requested to take sick leave the following day "to avoid the office while any risk associated with subsequent spread of the virus beyond the known cases subsides." (Def.'s 56.1 ¶¶ 26-27; Pl.'s Resp. Def.'s 56.1 ¶¶ 26-27; 1/20/21 Emails Part 2, Wells Decl. Ex. G, at JC_000101-02.) Wells denied Plaintiff's request because it did not qualify under the sick leave policy of the Office of Personnel Management ("OPM"), which governs Corps employees in the New York District. (Def.'s 56.1 ¶¶ 23, 28; Pl.'s Resp. Def.'s 56.1 ¶¶ 23, 28;

5

1/20/21 Emails Part 2 at JC_000100-01; *see also* OPM Sick Leave Policy, Wells Decl. Ex. C, ECF No. 79-3.) Pursuant to the OPM sick leave policy, "[a]n employee is entitled to use sick leave when he or she: [1] receives medical, dental, or optical examination or treatment; [2] is incapacitated for the performance of duties by physical or mental illness, injury, pregnancy, or childbirth; or [3] would, as determined by the health authorities having jurisdiction or by a health care provider, jeopardize the health of others by his or her presence on the job because of exposure to a communicable disease." (OPM Sick Leave Policy at 1.) On March 10, 2021, Wells approved Plaintiff's request to take two weeks of sick leave. (Def.'s 56.1 ¶ 30; Pl.'s Resp. Def.'s 56.1 ¶ 29.[2])

## PROCEDURAL HISTORY

Plaintiff filed the Complaint in this action on April 29, 2022, asserting claims against the Corps, Colonel Luzzatto and New York District Chief of Staff Matthew Cosby, for retaliation and disability discrimination, including failure to accommodate and hostile work environment, pursuant to the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.*, the New York State Human Rights Law, N.Y. Exec. L. § 290 *et seq.*, and the New York City Human Rights Law, N.Y.C. Admin. Code § 8-107 *et seq.* (*See* Compl., ECF No. 1.) The Government filed a motion to dismiss, arguing that the Complaint did not name the proper defendant; the claims were brought under statutes for which there is no remedy for federal employees; her denial of reasonable accommodation and retaliation claims were barred because Plaintiff elected the negotiated grievance process and arbitrated those claims;[3] and Plaintiff failed to administratively exhaust

---

[2] Plaintiff's response to Defendant's 56.1 Statement omits a response to Defendant's ¶ 28 and therefore her response to Defendant's ¶ 30 is misnumbered.

[3] Under the Civil Service Reform Act, a federal employee "who is aggrieved by discriminatory personnel practices may, in the first instance, pursue his grievance under the negotiated grievance procedure or the

6

her claim for hostile work environment. (*See* Gov't 7/5/22 Mem. at 11-25.) The Government further argued that, if Plaintiff were to amend her complaint to assert claims under the Rehabilitation Act, the only potentially viable claim she could pursue is a disparate treatment claim based on her allegations that she improperly was denied her requests for sick leave on November 5, 2020 and January 20, 2021, which were the subject of her properly exhausted complaint with the Department of the Army Equal Employment Office. (*Id.* at 25; *see also* Teleanu Decl., ECF No. 18, ¶¶ 2, 7; 3/1/21 EEO Letter, Teleanu Decl. Ex. A, ECF No. 18-1 (accepting for investigation Plaintiff's complaint regarding November 5, 2020 denial of leave requests for November 10, 12, 13, 2020); 4/5/21 EEO Letter, Teleanu Decl. Ex. F, ECF No. 18-6 (adding to investigation Plaintiff's claim that she was denied sick leave on January 20, 2021 based on disability and disparate treatment).)

On July 27, 2022, Plaintiff filed an amended complaint substituting Christine Wormuth, in her official capacity as the Acting Secretary of the Army, as a defendant in lieu of the Corps, but otherwise asserting the same claims as in the Complaint. (*See* FAC, ECF No. 24.) The Government relied upon its original motion to dismiss (*see* 8/15/22 Letter, ECF No. 25) and, by Memorandum Opinion and Order, dated February 27, 2023, District Judge Furman granted the motion to dismiss on the ground that "Section 501 of the Rehabilitation Act provides the exclusive route by which federal employees may raise claims of employment discrimination on the basis of disability." (Mem. Op. & Order, ECF No. 38, at 1.) Judge Furman denied Plaintiff's request to construe her

---

statutory complaint procedure, but not both." *Fernandez v. Chertoff*, 471 F.3d 45, 52 (2d Cir. 2006). In her original Complaint, Plaintiff asserted claims based on failure to provide reasonable accommodations for telework and retaliation, but previously had elected the negotiated grievance process and participated in arbitration with respect to those claims. (*See* Gov't 7/5/22 Mem., ECF No. 17, at 13-20.)

7

claims as arising under the Rehabilitation Act, given that she was represented by counsel and did not address that "fundamental and undisputed defect" when previously given the chance to amend her complaint in response to the motion to dismiss. (*Id.* at 2.)

On March 31, 2023, Judge Furman held oral argument on whether, and to what extent, Plaintiff should be granted further leave to amend. (*See id.*; *see also* 3/31/23 Tr., ECF No. 42.) Following argument from the parties, Judge Furman granted Plaintiff leave to amend only her claim for discriminatory denial of sick leave.[4] (3/31/24 T. at 14, 18; *see also* 3/31/23 Order, ECF No. 41, at 1.) Judge Furman found that amendment of Plaintiff's claims based on denial of reasonable accommodation, retaliation and hostile work environment would be futile. (*Id.* at 14-18.)

On May 4, 2023, Plaintiff filed the SAC, which despite largely repeating the allegations in the FAC, asserts a single claim for discriminatory denial of sick leave in violation of the Rehabilitation Act. (SAC ¶¶ 130-33.) Defendant filed an Answer on May 5, 2023. (Answer, ECF No. 47.) On June 5, 2023, the parties consented to the undersigned's jurisdiction for all purposes. (Notice of Consent, ECF No. 52.) Following the completion of discovery, Defendant filed the motion for summary judgment that now is before the Court. Plaintiff filed her memorandum in opposition on March 31, 2025 (*see* Pl.'s Opp. Mem., ECF No. 86) and Defendant filed a reply memorandum on May 8, 2025. (*See* Def.'s Reply Mem.) In the reply memorandum, Defendant noted that, pursuant to Federal Rule of Civil Procedure 25(d), Daniel P. Driscoll, the current Secretary of the Army automatically was substituted for former Secretary Wormuth. (*Id.* at 1 n.1.)

---

[4] Prior filings refer to the November 5, 2021 denial as a denial of sick leave, but the current record reveals that it was a denial of annual leave. (*See* Nov. 2020 Leave Request Forms, Wells Decl. Ex. E, ECF No. 79-5, at JC_000084-86.)

**LEGAL STANDARDS**

**I.   Summary Judgment**

Summary judgment is appropriate when there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-50 (1986). The moving party has the initial burden of demonstrating the absence of a disputed issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 321-23 (1986). "A fact is 'material' for these purposes when it 'might affect the outcome of the suit under the governing law.'" *Jeffreys v. City of New York*, 426 F.3d 549, 553 (2d Cir. 2005) (quoting *Anderson*, 477 U.S. at 248). A dispute concerning a material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* In determining whether genuine issues of fact exist, "the court must review the record taken as a whole." *Moll v. Telesector Res. Grp., Inc.,* 94 F.4th 218, 227 (2d Cir. 2024) (cleaned up).

Moreover, the Court must "view the evidence in the light most favorable to the non-moving party . . . and may grant summary judgment only when 'no reasonable trier of fact could find in favor of the nonmoving party.'" *Allen v. Coughlin*, 64 F.3d 77, 79 (2d Cir. 1995) (internal citations omitted); *see also Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 122 (2d Cir. 2004) (in deciding Rule 56 motion, the court "is not to weigh the evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments." (citation omitted)). "Indeed, in ruling on a motion for summary judgment, the court must disregard all evidence favorable to the moving party that the jury is not required to believe." *Moll*, 94 F.4th at 227-28. Nonetheless, summary judgment is proper when the non-moving party "has failed to

make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Id.* at 228 (citation omitted).

## II. Rehabilitation Act

The Rehabilitation Act provides, in relevant part, that "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be . . . subjected to discrimination under any program or activity receiving Federal financial assistance[.]" 29 U.S.C § 794(a).

Absent direct evidence of discrimination, disability discrimination claims under the Rehabilitation Act are assessed under the familiar burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). *See Berger v. U.S. Dep't of Commerce*, No. 22-CV-10257 (GHW) (SDA), 2025 WL 1095419, at *8 (S.D.N.Y. Mar. 27, 2025), *report and recommendation adopted*, 2025 WL 1094495 (S.D.N.Y. Apr. 11, 2025); *Porter v. Dartmouth-Hitchcock Med. Ctr.*, 92 F.4th 129, 149 (2d Cir. 2024) ("The *McDonnell Douglas* test is inapplicable where the plaintiff presents direct evidence of discrimination, *e.g.*, that the employer's motivation was discriminatory on its face.") (cleaned up).

To establish a *prima facie* case of disability discrimination, a plaintiff must demonstrate that: (1) her employer is subject to the Rehabilitation Act, (2) she is a disabled person as defined by the Rehabilitation Act, (3) she is "otherwise qualified" for the position (meaning that she could perform the essential functions of her job with or without reasonable accommodation), and (4) she suffered an adverse employment action because of her disability. *See id.; see also Perkins v. United States Dep't of the Treasury*, No. 18-CV-08911 (NSR), 2022 WL 19772, at *14 (S.D.N.Y. Jan. 3, 2022). The causation standard is the same that applies under the Americans with Disabilities Act, *see* 29 U.S.C. § 794(d), which requires a plaintiff to show that discrimination was the but-for

cause of any adverse employment action. *See Natofsky v. City of New York*, 921 F.3d 337, 345-48 (2d Cir. 2019).

## DISCUSSION

Defendant argues that he is entitled to summary judgment because Plaintiff has not adduced sufficient evidence to establish a *prima facie* case of disability discrimination and because there is no evidence to show that Plaintiff was denied leave, on either of the two occasions at issue, because of her disability. (Def.'s Mem. at 9-15.) Plaintiff devotes much of her opposition memorandum to arguing that she has set forth a *prima facie* case for her failure to accommodate claims and that she has satisfied her burden to show that is a disabled person within the meaning of the Rehabilitation Act. (*See* Pl.'s Opp. Mem. at 1-2, 5-17.) As to the later point, as set forth above, Judge Furman denied Plaintiff leave to replead her claim based on the denial of a reasonable accommodation. (3/31/23 Order at 1.) Moreover, Defendant does not contest the first three elements of Plaintiff's *prima facie* case, including that Plaintiff is disabled within the meaning of the Rehabilitation Act. (*See generally* Def.'s Mem.) Thus, the Court turns to the fourth element: whether Plaintiff has presented evidence from which a reasonable jury could conclude that she suffered an adverse employment action because of her disability.

I. **November 5, 2020 Denial Of Three Days Of Annual Leave**

Defendant first argues that the denial of annual leave does not constitute an adverse employment action within the meaning of the Rehabilitation Act. (Def.'s Mem. at 9-11.) To establish an adverse employment action, a plaintiff must show "some harm respecting an identifiable term or condition of employment." *Muldrow v. City of St. Louis, Missouri*, 601 U.S.

11

346, 355 (2024).[5] In this context, terms and conditions cover more than economic or tangible factors. *See Ciotti v. City of New York*, No. 23-CV-10279, 2025 WL 308022, at *13 (S.D.N.Y. Jan. 27, 2025) The harm need not be "significant[,] serious or substantial." *Muldrow*, 601 U.S. at 355. Although prior to *Muldrow*, courts in this Circuit routinely found that the denial of vacation days did not constitute a materially adverse action (*see* Def.'s Mem. at 10 (citing cases)), following *Muldrow*, at least one court has held that the denial of vacation requests may constitute adverse employment actions.[6] *See Esqueda v. NYU Langone Hosps.*, No. 21-CV-10267 (LTS) (SLC), 2025 WL 1785870, at *6 (S.D.N.Y. June 27, 2025).

Nonetheless, the Court agrees with Defendant that the Government is entitled to summary judgment because Plaintiff has not presented any evidence that her leave request was denied because of her disability. Plaintiff testified that Wells never mentioned her disability in connection with her leave requests and has not presented any evidence that Wells, or anyone else at the Corps, made negative remarks regarding her disability. (Def.'s Mem. at 11; Pl.'s Dep. Tr., Kumar Decl. Ex. A, ECF No. 78-1, at 82.) Plaintiff also does not argue that annual leave was approved for other similarly situated employees who did not have a disability or any other evidence from which a reasonable jury could find that Wells denied her leave request because of her disability. *See Barbier v. Raimondo*, 758 F. Supp. 3d 231, 248 (S.D.N.Y. 2024) (granting

---

[5] *Muldrow* was a Title VII sex-discrimination case challenging a job transfer, but courts in this District consistently have extended its holding beyond that context, including to claims brought under other federal discrimination statutes with analogous statutory language. *See, e.g.*, *Mitchell v. Planned Parenthood of Greater New York, Inc.*, 745 F. Supp. 3d 68, 90 (S.D.N.Y. 2024) (citing cases).

[6] Although Defendant argues that courts have continued to find that the denial of leave requests were not adverse actions in cases decided after *Muldrow*, the cases cited by Defendant do not discuss *Muldrow* even though they were decided after it. (*See* Def.'s Reply Mem. at 6.)

summary judgment to defendant on Rehabilitation Act claim where record was "devoid of direct or indirect evidence supporting an inference of discrimination").

Moreover, even if Plaintiff could establish a *prima facie* case of discrimination, Defendant has proffered evidence that Wells denied her November 5, 2020 annual leave request (to take leave on November 10, 12 and 13, 2020) based upon the mission needs of the Corps and the PAO's ability to meet upcoming tasks, including a particular high-profile assignment that Plaintiff was assigned to cover. (Def.'s 56.1 ¶¶ 16-17; Pl.'s Resp. Def.'s 56.1 ¶¶ 16-17.) Plaintiff has not presented any evidence from which a reasonable factfinder could conclude that Defendant's stated reasons for denying her leave request were pretextual. Plaintiff does not dispute that Wells denied her leave request for the reasons he provided. (Def.'s 56.1 ¶¶ 16-17; Pl.'s Resp. Def.'s 56.1 ¶¶ 16-17.) Plaintiff nonetheless argues that Defendant's knowledge of her disability and failure to consider her accommodation requests demonstrate discriminatory intent.[7] (Pl.'s Mem. at 6; Pl.'s Resp. Def.'s 56.1 ¶ 21.)

However, Wells testified that, at the time Plaintiff made the leave request, she had not provided additional detail with respect to her reasonable accommodation, despite being given two deadlines to do so, and therefore he "made the decision based off the information that [he] had at the time[.]" (Wells Dep. Tr., Lieberman Decl. Ex. 1, ECF No. 89-1, at 77; *see also* Wells Decl. ¶ 13.) Wells also testified that, because Plaintiff has not submitted any additional documentation on her condition by the October deadlines, he "had no reason to think that there would be an issue" with her covering the high-profile assignment. (Wells Dep. Tr. at 91.) Thus, Wells did

---

[7] To the extent Plaintiff is challenging the denial of the accommodation itself, she is not permitted to relitigate her reasonable accommodation claim, which has been dismissed. (*See* Def.'s Reply Mem. at 2-3.)

13

consider Plaintiff's prior accommodation request, but determined that she could complete the assignment and denied her leave request based on the conflict with Plaintiff's work schedule. (*Id.* at 92.) Nonetheless, Plaintiff subsequently was permitted to take sick leave to attend her medical appointment on November 10, 2020, did not cover the high-profile assignment, and was permitted to telework for the remainder of the month.[8] (Def.'s 56.1 ¶¶ 19-20; Pl.'s Resp. Def.'s 56.1 ¶¶ 19-20.)

Because Plaintiff has not adduced any evidence from which a reasonable factfinder could conclude that the denial of her annual leave request was because of her disability, summary judgment in favor of Defendants is warranted. *See Natofsky*, 921 F.3d at 351 (affirming summary judgment in favor of defendant where no reasonable factfinder could conclude that defendant's explanation that plaintiff was demoted for poor performance was pretextual); *see also Whitney v. Montefiore Med. Ctr.*, No. 21-CV-09623 (PAE), 2023 WL 7386400, at *21 (S.D.N.Y. Nov. 8, 2023) (granting summary judgment to defendant where plaintiff provided no evidence that proffered reasons for his termination were pretext for discrimination), *aff'd*, 2025 WL 2101512 (2d Cir. July 28, 2025).

## II. January 20, 2021 Denial Of One Day Of Sick Leave

Defendant argues that, for the same reasons, Plaintiff has not presented any evidence that her sick leave request was denied because of her disability. (Def.'s Mem. at 11-15.) Plaintiff

---

[8] Plaintiff also asserts that she "suffered a loss of 'material benefits' when forced to use her annual and sick leave days to self-accommodate her own disability." (Pl.'s Opp. Mem. at 8, 11.) However, as Defendant argues, Plaintiff's remaining claims are based on the denial of leave, not on any claim that she was forced to use leave to self-accommodate her disability. (Def.'s Reply Mem. at 5.) This argument appears directed to Plaintiff's reasonable accommodation claim regarding telework, which previously was dismissed.

admits that she requested to take sick leave "to avoid the office while any risk associated with subsequent spread of the virus beyond the known cases subsides." (Pl.'s Resp. Def.'s 56.1 ¶ 27.) Plaintiff also admits that Wells denied her request because it did not fall into any of the three categories in the OPM sick leave policy for which sick leave was authorized. (*Id.* ¶28.) As with her annual leave request, Plaintiff admits that Wells did not mention her disability in connection with her sick leave request. (Def.'s 56.1 ¶ 31; Pl.'s Resp. Def.'s 56.1 ¶ 29.) Nor does she contend that any non-disabled person was granted sick leave outside of the OPM guidelines or present any other evidence of discriminatory intent. (*See* Def.'s Mem. at 11-12, 14; *see also* Def.'s Reply Mem. at 7.)

Moreover, although Plaintiff appears to disagree with the OPM sick leave policy and asserts that Wells misunderstood it (*see* Def.'s 56.1 ¶ 28; Pl.'s Resp. Def.'s 56.1 ¶ 28; *see also* Pl.'s Opp. Mem. at 12-13), she does not cite to any evidence from which a reasonable jury could infer that Wells's reliance on the OPM policy was pretextual and that the real reason he denied her leave request was because of her disability. Plaintiff does cite to other emails exchanged between her and Wells prior to her sick leave request, in which she suggested that she may have come in contact with Colonel Luzzatto and been exposed to the virus. (Pl.'s Resp. Def.'s 56.1 ¶¶ 26-27.) However, as set forth above, Wells subsequently determined that Plaintiff could not have come in contact with Colonel Luzzatto. (*See* 1/20/21 Emails Part 1, Wells Decl. Ex. F, at USACE_000840-41.) Only then did Plaintiff request sick leave to avoid the office. (*See* Def.'s 56.1 ¶¶ 26-27; Pl.'s Resp. Def.'s 56.1 ¶¶ 2627; 1/20/21 Emails Part 2, Wells Decl. Ex. G, at JC_000101-02.) In any event, even if Wells were wrong about whether Plaintiff's sick leave request fell into one of the three authorized categories, it does not change the undisputed fact that he denied it on that

15

basis. (Pl.'s Resp. Def.'s 56.1 ¶ 28; Wells Dep. Tr. at 166-67.) Accordingly, the Court finds that Plaintiff has not presented any evidence from which a reasonable factfinder could conclude that Plaintiff's sick leave request was denied because of her disability and, therefore, Defendant is entitled to summary judgment on this claim as well.

## **CONCLUSION**

For the foregoing reasons, Defendant's motion for summary judgment is GRANTED. The Clerk of Court is respectfully requested to enter judgment in favor of Defendant and close this case.

Dated:	New York, New York
	August 19, 2025

_____
**STEWART D. AARON**
**United States Magistrate Judge**